UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TIMOTHY COOK, JR.,

     Plaintiff,

v.

LYNN AND WILLIAM, INC.,

     Defendant.

No. 22-cv-10408-PBS

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO STAY CIVIL
LITIGATION PENDING RESOLUTION OF PLAINTIFF'S CRIMINAL MATTER
(DKT. NO. 42)**

CABELL, U.S.M.J.

## I.   INTRODUCTION

This case arises out of an injury the plaintiff, Timothy Cook, Jr. ("plaintiff") suffered while engaged as the captain of the defendant's vessel.  The plaintiff alleges that he fell while aboard the vessel, causing a fish pick to pierce his right eye and ultimately resulting in the loss of that eye.  The defendant contends that the plaintiff's use of illegal drugs directly caused his injury.  Separately, the plaintiff is a defendant in an unrelated state court criminal action pending in Essex County Superior Court.  There, the plaintiff faces drug-related charges arising from an event that occurred over a year prior to his eye injury.  Against this backdrop, the defendant moves to stay the present litigation until the plaintiff's pending criminal matter

is resolved; the plaintiff opposes.  (Dkt. Nos. 42, 65).  For the following reasons, the motion to stay is denied.

## II.  <u>RELEVANT BACKGROUND</u>

On or about August 5, 2021, the plaintiff was working as the captain of the defendant's commercial fishing vessel.  (Dkt. No. 1, Complaint, ¶ 5; Dkt. No. 65, Plaintiff's Opposition, p. 2). The plaintiff claims that he slipped on some raised wooden decking aboard the vessel, "that he fell backwards, and that the metal tip of a fish pick which he was carrying poked him in the eye."  (Dkt. No. 65, p. 2).  The plaintiff asserts that the wooden decking constituted an unseaworthy condition and that the defendant was negligent in not remediating its slipperiness.  (Dkt. No. 1, ¶¶ 16, 20; Dkt. No. 65, p. 3).  The defendant claims that the plaintiff was high on heroin at the time of his injury and that he stabbed his eye with a hypodermic needle rather than a fish pick.  (Dkt. No. 43, Defendant's Memorandum in Support of its Motion to Stay, p. 2).  Discovery in this case is set to close on May 30, 2023, with dispositive motions due June 16, 2023.  (Dkt. No. 62).

On August 10, 2020, almost a year prior to the fishing trip at issue in this case, the plaintiff was indicted in Massachusetts state court on one charge of trafficking in fentanyl, in violation of M.G.L. c. 94C, § 32E(c)(2), and one count of possession of a Class B controlled substance, in violation of M.G.L. c. 94C, § 34. Indictment, *Commonwealth v. Timothy Cook*, No. 2077CR00200 (Mass.

Super. Ct. Aug. 10, 2020).  These charges stem from the defendant's arrest in Haverhill, Massachusetts on June 1, 2020, when police allegedly "found eight baggies of a tan powdery substance, later determined to be fentanyl," in the plaintiff's pants pocket. Findings of Fact, Rulings of Law, and Order on Defendants' Motion to Suppress at 6, *Cook*, No. 2077CR00200, (Mass. Super. Ct. Dec. 14, 2022).[1]  Cook's next state court appearance is currently scheduled for June 2, 2023.  Endorsement on Motion to Continue, *Cook*, No. 2077CR00200, (Mass. Super. Ct. May 1, 2023).  No trial date has been set.

During discovery in the present case, the plaintiff declined during his deposition to answer "questions about his drug use and drug purchasing habits in June of 2020" because those answers might tend to incriminate him in his pending state case.  (Dkt. No. 43, p. 4).

## III. <u>LEGAL STANDARD</u>

At its discretion, a district court may stay civil litigation due to "[t]he pendency of a parallel or related criminal proceeding." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004).  A stay is appropriate "when the interests of justice counsel in favor of such a course." *Id.*

---

[1] The defendant attached a copy of the state court's order to its memorandum in support of the motion to stay.  (Dkt. No. 43-1).

at 78.   The "interests of justice" involve several competing factors:

> (i) the interests of the civil plaintiff in proceeding
> expeditiously with the civil litigation, including the
> avoidance of any prejudice to the plaintiff should a
> delay transpire; (ii) the hardship to the defendant,
> including the burden placed upon him should the cases go
> forward in tandem; (iii) the convenience of both the
> civil and criminal courts; (iv) the interests of third
> parties; . . . (v) the public interest[;] . . . (vi) the
> good faith of the litigants (or the absence of it)[;]
> and (vii) the status of the cases.

*Id.* (internal citations omitted).   The chief concern is the predicament the criminal defendant faces in either asserting his Fifth Amendment right in the civil action, thereby risking a verdict against him, or waiving his right and potentially disclosing evidence that can be used to convict him in the criminal action. *Green v. Cosby*, 177 F. Supp. 3d 673, 679 (D. Mass. 2016); *Zavatsky v. O'Brien*, 902 F. Supp. 2d 135, 147-48 (D. Mass. 2012). The movant carries the "heavy burden" of establishing that a stay is warranted. *Microfinancial*, 385 F.3d at 77 (citing *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983)).

Even where a stay is appropriate, it should be narrowly tailored to avoid unnecessary delay. *See Green*, 177 F. Supp. 3d at 681 (granting stay as to defendant's discovery only); *Zavatsky*, 902 F. Supp. 2d at 149 ("A complete stay, however, is unwarranted at this time."). Consequently, complete stays are disfavored. *See Green*, 177 F. Supp. 3d at 681.

IV.   **DISCUSSION**

A.   **The Plaintiff's Assertion of His Fifth Amendment Right**

The defendant's first argument centers on the plaintiff's invocation of his Fifth Amendment right against self-incrimination to avoid answering deposition questions about his drug use and purchasing habits in June of 2020.  According to the defendant, the plaintiff's refusal to answer these questions has "hinder[ed] the Defendant from preparing its defenses" and "impeded the search for truth in the present litigation."  (Dkt. No. 43, p. 5).  The defendant proposes that the case thus be stayed until the plaintiff's criminal case is resolved, eliminating the plaintiff's self-incrimination concerns and allowing for fulsome disclosure.

At the outset, it is not clear that the plaintiff's pending criminal matter is "parallel or related" to this litigation, especially where the criminal case began roughly a year before the events underlying the civil case.  To be sure, a strictly parallel relationship is not required to obtain a stay.  *See Green*, 177 F. Supp. 3d at 680.  A civil lawsuit and a criminal prosecution may be sufficiently related if "there is substantial risk that discovery provided by [the criminal defendant in the civil action] could be used against him in a criminal trial."  *Id*.  Although the court is not convinced that the plaintiff's alleged drug habits in June 2020 are particularly relevant to the civil lawsuit, the defendant seeks to explore the connection, and the plaintiff has

responded by asserting his right against self-incrimination.  The
court thus assumes that truthfully answering the defendant's
questions might tend to incriminate the plaintiff in his pending
criminal case, which would make the two cases sufficiently related
to consider a stay.

Another quirk places this motion outside the ambit of the
typical motion to stay.  Usually, the party seeking the stay is
the criminal defendant (and often also the civil defendant).  *See,
e.g.*, *Microfinancial*, 385 F.3d at 76; *Green*, 177 F. Supp. 3d at
677; *cf. Zavatsky*, 902 F. Supp. 2d at 139 (stay sought by some
defendants, as well as intervening federal and state governments,
and opposed by other defendants).  *But see SEC v. TelexFree, Inc.*,
52 F. Supp. 3d 349, 351 (D. Mass. 2014) (stay sought by government
as intervenor).  As noted above, a stay is ordinarily meant to
save the criminal defendant from having to choose between invoking
his Fifth Amendment right to his detriment in the civil case or
waiving the right to his detriment in the criminal case.  *Green*,
177 F. Supp. 3d at 679; *Zavatsky*, 902 F. Supp. 2d at 147-48.  Here,
the plaintiff, who is the criminal defendant, has chosen to assert
his Fifth Amendment right and now opposes the motion to stay,
meaning that there is no such tension to resolve.

At bottom, the defendant is seeking a stay because the
plaintiff's refusal to answer certain questions is reportedly
impeding the defendant's ability to discover evidence that may be

beneficial to its case.  However, other means are better suited to addressing this issue than a stay, as the defendant itself seems to suggest.  For one, the defendant could move to compel the plaintiff to answer its questions if the defendant believes the plaintiff is improperly invoking the Fifth Amendment.  *See, e.g.*, *McIntyre's Mini Comput. Sales Grp., Inc. v. Creative Synergy Corp.*, 115 F.R.D. 528, 531 (D. Mass. 1987) (setting out framework for district court to evaluate witness' claimed Fifth Amendment privilege).[2]  Indeed, the defendant signals its intention to do exactly that in its memorandum.  (Dkt. No. 43, p. 5).  Alternatively, the defendant could seek to have an adverse inference drawn against the plaintiff based on his refusal to answer questions about his alleged drug habits in June 2020.  *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.").[3]  Either of these solutions could

---

[2] It bears noting that courts are loathe to intrude where a witness' assertion of his Fifth Amendment right is facially valid.  *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 256-57 (1983) ("[A] District Court cannot compel Conboy to answer deposition questions, over a valid assertion of his Fifth Amendment right, absent a duly authorized assurance of immunity at the time."); *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 519 (1st Cir. 1996) ("We doubt that the court could have ordered Serafino to answer questions to which the privilege attached.").

[3] The court notes that the plaintiff has already testified that in June 2020 he was a "heroin addict" who would use heroin every day.  (Dkt. No. 65-4, pp. 88:9-89-1).  He also testified that he has only used illegal opiates once since then, in October 2020.  (*Id.* at p. 92:19-24).  There may not be a great need to seek to draw an adverse inference given this testimony.

more directly remedy the defendant's complained-of harm without delaying this case for months or longer.

In sum, a stay is not warranted on the facts presented. The plaintiff has elected to assert his Fifth Amendment right and risk potential adverse consequences in this action. There are less drastic means available through which the defendant can seek the evidence it believes it needs or a corresponding adverse inference. Further, both parties, the court, and the public have an interest in moving this case along expeditiously, particularly given that the deadlines for discovery and dispositive motions are fast approaching. *See Microfinancial*, 385 F.3d at 76 (upholding denial of motion to stay filed 24 days before trial); *cf. Zavatsky*, 902 F. Supp. 2d at 148-49 (finding that partial stay was warranted where "th[e] case [was] not on the brink of trial and discovery ha[d] not yet begun"). For all these reasons, the court will not issue a stay based on the plaintiff's invocation of his right against self-incrimination.

### B.   Mosier's Assertion of His Fifth Amendment Right

The defendant also argues for a stay based on "the unavailability of key witnesses." (Dkt. No. 43, p. 5). The defendant specifically focuses on Todd Mosier, an apparent fact witness whom the defendant seeks to depose.[4] Mosier is reportedly

---

[4] The same day that it filed this motion to stay, the defendant moved to compel Mosier to appear for a deposition. (Dkt. No. 44). The court denied that motion

facing criminal charges in Maine stemming from his alleged unlawful possession of fentanyl powder on or about April 14, 2022.  (Dkt. No. 43-3).  The defendant asserts that Mosier "will likely assert his Fifth Amendment privilege at deposition related to any questioning regarding illegal and/or illicit drug use aboard the Vessel during the trip [on which] the Plaintiff sustained his alleged injuries."  (Dkt. No. 43, p. 6).

Assuming that Mosier is a "key witness," there are multiple gaps in the defendant's argument.  First, there is no indication that Mosier's pending charge, which postdates the plaintiff's injury by several months, is at all related to "illegal and/or illicit drug use aboard the Vessel" such that Mosier's potential testimony about said drug use could be used against him in his criminal proceeding.  *See Green*, 177 F. Supp. 3d at 680; *see also Microfinancial*, 385 F.3d at 79 (upholding denial of stay where there was no indication movant had been indicted for conduct at issue).  Moreover, it is not clear how staying this action until the *plaintiff's* criminal case is resolved would in any way abrogate Mosier's need to assert his Fifth Amendment right.[5]  The defendant rightly does not request a stay until Mosier's criminal case is

---

without prejudice so that the defendant could refile the motion in the District of Maine, where Mosier's deposition would take place.  (Dkt. No. 61).

[5] Mosier certainly would not be able to invoke the Fifth Amendment to avoid incriminating the plaintiff.  See *Fisher v. United States*, 425 U.S. 391, 409 (1976) ("[T]he [Fifth Amendment] privilege protects a person only against being incriminated by his own compelled testimonial communications.").

resolved, and any such request would be unavailing.  Mosier's
potential invocation of the Fifth Amendment does not merit a stay.

>    **C.   Plaintiff's Failure to Prosecute**

Finally, the defendant argues that the plaintiff's "continued
delays" in this action indicate a "lack of desire to prosecute the
case" and warrant a stay.  (Dkt. No. 43, p. 6).  The defendant
focuses particularly on the plaintiff's failure to provide certain
written discovery and a related failure to execute authorizations
for the disclosure of the plaintiff's medical records.  From these
alleged failures, the defendant infers the plaintiff is attempting
to delay this action.  That being the case, so the defendant
argues, it would be better to simply stay this action pending the
resolution of the plaintiff's criminal action.

There is some truth to the defendant's argument.  This civil
action, which has been pending for over a year, has met with some
delays.  (Dkt. No. 34, Order continuing mediation; Dkt. No. 62,
Order granting motion for extension of time).  Some of these delays
are arguably attributable to the plaintiff,[6] although the court
notes that it was the defendant who moved to extend the deadlines
for discovery and dispositive motions.  (Dkt. No. 46).  However,
since the defendant filed this motion, the plaintiff has produced

---

[6] By way of example, the plaintiff sought three extensions of time to file its
opposition to the defendant's motion to stay, twice missing the deadlines that
he himself requested.  (Dkt. No. 52; Dkt. No. 57; Dkt. No. 63).

medical and billing records from multiple providers.  (Dkt. No. 66-2).  He also must produce the discovery previously compelled by this court by May 29.[7]  (Dkt. No. 58; Dkt. No. 78).  The May 30 discovery deadline remains in place, as does the June 16 deadline for dispositive motions.  (Dkt. No. 62).  The case is proceeding on its way to trial.  A stay would only cause further and likely significant delay, contrary to the interests of all involved.

**V.    CONCLUSION**

For the foregoing reasons, the defendant's motion to stay (Dkt. No. 42) is DENIED.


                                        /s/ Donald L. Cabell
                                        DONALD L. CABELL, U.S.M.J.

DATED:  May 25, 2023

---

[7] A review of the docket reveals that the court erred in ordering the plaintiff to produce the compelled discovery by Monday, May 29, prior to Sarah Knowlton's deposition on Wednesday, May 31.  (Dkt. No. 78).  Knowlton's deposition was scheduled for Wednesday, May 24, (Dkt. No. 72, p. 4), and the plaintiff represented that he would produce the discovery by Monday, May 22, (Dkt. No. 76, ¶ 2).  Nonetheless, the May 29 deadline remains in place to avoid the unfair prejudice that would result from retroactively setting a deadline that has already passed.  Any resulting prejudice to the defendant is mitigated by the order's provision that the plaintiff may not conduct any depositions until producing the compelled discovery in full.  (Dkt. No. 78).